1

2        **E-filed 2/16/06**

3

4

5

6

7

8                          NOT FOR CITATION

9           **IN THE UNITED STATES DISTRICT COURT**

10         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12

13   ROBERT SILACCI, et al.              Case No. C 04-04125 JF

14                  Plaintiff,           ORDER[1] GRANTING MOTION FOR
                                         SUMMARY JUDGMENT
15   v.
                                         [Docket No. 35]
16   SCOTTSDALE INSURANCE COMPANY, et al.

17                  Defendants.

18

19

20        On August 8, 2004, Plaintiffs Robert Silacci, Rusti Silacci, Sergio Barrera, Maria Barrera,

21   Magdelena Barrera, Clodoaldo Cortez, and Guadalupe Cortez sued Defendant Scottsdale

22   Insurance Company ("Scottsdale") in the Monterey Superior Court, seeking declaratory relief and

23   damages.  Plaintiffs allege that they are entitled to compensatory and punitive damages, costs

24   incurred in the investigation and defense of their claim that they were entitled to independent

25   counsel in the underlying tort action, cost of suit, and reasonable attorney's fees.  On September

26   29, 2004, pursuant to 28 U.S.C. § 1441(b), Scottsdale removed Plaintiffs' suit to this Court on

27   _____

28        [1]        This disposition is not designated for publication and may not be cited.

1  the basis of diversity of citizenship.  On December 14, 2005, Scottsdale filed the instant motion

2  for summary judgment.  Plaintiffs opposed the motion.  The Court heard oral argument on

3  February 3, 2006.  For the reasons set forth below, the motion will be granted.

4

5                                   **I. BACKGROUND**

6        This instant action arises from a lawsuit in which a tenant of a building owned by

7  Plaintiffs brought suit against Plaintiffs for damages resulting from an explosion in the building

8  that occurred on June 16, 2003.  The explosion caused a fire that resulted the complete

9  destruction of three living units and severe damage to the remaining two units.  Declaration of

10 Alan B. Yuter in support of Scottsdale's motion for summary judgment (hereinafter, " Yuter

11 Decl."), Ex. B.  Debra Lynn Rianda ("Rianda"), who was a tenant of the apartment where the

12 explosion occurred, alleged that, as a result of the fire, she suffered severe burns over 36% of her

13 body, pain, misery, permanent scarring, and shock.  Yuter Decl., Ex. D, p. 7.

14       The investigative report prepared by the Seaside Fire Department concluded that "the

15 cause of the fire was due to a flammable gas explosion from flowing propane inside the

16 apartment eventually reaching an ignition source, most likely the pilot light from the hot water

17 heater."  Yuter Decl., Ex. B,  p. 3.  According to the report, Rianda admitted to the investigator

18 that she was depressed and had intended to commit suicide by slitting her wrist in a motel prior

19 to the fire.  *Id.,* pp. 13-15.  The investigator suggested that Rianda had disconnected the gas line

20 to the wall heater and allowed propane gas to leak into the apartment "as a means for committing

21 suicide."  *Id.,* p. 16.  In a supplemental report, the investigator recommended filing charges

22 against Rianda and issuing an arrest warrant for her alleged violations of the California Penal

23 Code, including "(1) unlawfully causing a fire; (2) abusing or endangering health of child; and

24 (3) vandalism."  Yuter Decl., Ex. C.

25       On April 5, 2004, on the basis of her alleged injuries from the explosion and fire, Rianda

26 filed a complaint against Plaintiffs in the Monterey Superior Court.  She alleged several claims

27 for relief, including nuisance, nuisance per se, fraud, negligence, negligence per se, and strict

28 liability.  Yuter Decl., Ex. D.

1   The apartment building was insured by Scottsdale from at least November 12, 2002 to at

2   least November 12, 2003.  Complaint, ¶ 13.  By letter dated on April 22, 2004, Scottsdale

3   explained to Plaintiffs that it was its policy not to provide coverage for "allegations of fraud,

4   violations of the Statutory Duty Strict Liability and the property not being fit for human

5   inhabitation" because they "do not meet the definition of an occurrence resulting in 'bodily

6   injury,' 'property damage,' or 'personal and advertising injury.'"  Yuter Decl., Ex. F. p. 5.  The

7   letter further stated that "these reservations of rights do not give rise to any conflict of interest

8   which would entitle the Insured to select independent counsel pursuant to Civil Code 2820."  *Id.,*

9   p. 6.  Accordingly, Scottsdale agreed to defend Plaintiffs in the underlying lawsuit, but reserved

10  its right to seek reimbursement for defense costs allocable to noncovered claims, including all of

11  the claims except the negligence claim.  Yuter Decl., Ex F, pp. 1, 6.

12      Scottsdale retained the law firm of Hosp, Gilbert, Bergsten & Phillips to defend Plaintiffs.

13  Yuter Decl., Ex. F, p. 6.  Jed Friedland ("Friedland") was assigned to represent Plaintiffs.  Yuter

14  Decl., Ex. G, ¶ 28.  Shortly after this appointment, Plaintiffs consulted with Nina M. Patane

15  ("Patane") from the law firm of Patane & Gumberg, to determine whether Plaintiffs' discussion

16  with Friedland could impact the coverage issues raised by Scottsdale. Declaration of Robert

17  Silacci (hereinafter "Robert Silacci Decl."), ¶¶ 2-4; Declaration of Rusti Silacci, (hereinafter

18  Rusti Silacci Decl.") ¶¶ 2-4.  On May 21, 2004, Patane requested that Scottsdale provide

19  Plaintiffs with independent counsel ("*Cumis* counsel").  Yuter Decl., Ex. K.  This request was

20  denied by Scottsdale's claim specialist Cathy Gilchrist ("Gilchrist") on May 26, 2004.  Yuter

21  Decl., Ex. H.  Gilcrhist and another Scottsdale claim specialist deposed by Plaintiffs, Gene Metz

22  ("Metz"), are long-term claims employees, both of whom completed high school and received

23  some college education.  Declaration of Nina M. Patane (hereinafter "Patane Decl."), Ex. A, pp.

24  8-10 and Ex. B, pp. 10-12.  On July 13, 2004, the firm of Patane & Gumberg prepared a letter

25  outlining the issues and facts of the underlying suit as well as the applicable law with respect to

26  entitlement to *Cumis* counsel.  The letter requested that Scottsdale appoint an independent

27  counsel in light of these factors.  Yuter Decl., Ex. L.  On July 21, 2004. Scottsdale again denied

28  Plaintiffs' request for *Cumis* counsel.  Yuter Decl., Ex. I.

Case No. C 04-04125 JF
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(JFEX2)

1    On or about January 24, 2005, Scottsdale settled the lawsuit brought by Rianda.

2    Plaintiffs' Opposition Brief, p. 9.  Scottsdale paid the entire amount of the settlement and also

3    reimbursed Plaintiffs $4,135 for Patane's attorney's fees.  Yuter Decl., Ex. A; Scottsdale's

4    separate statement of uncontroverted facts, pp. 13-14.

5

6                                **II.  LEGAL STANDARD**

7         A motion for summary judgment should be granted if there is no genuine issue of

8    material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56

9    (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the

10   initial burden of informing the Court of the basis for the motion and identifying the portions of

11   the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate

12   the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

13   (1986).

14        If the moving party meets this initial burden, the burden shifts to the non-moving party to

15   present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

16   *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

17   evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

18   party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

19   *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

20        "When the nonmoving party has the burden of proof at trial, the moving party need only

21   point out 'that there is an absence of evidence to support the nonmoving party's case.'"

22   *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.,* 477 U.S. at

23   325 (1986)).  Once the moving part meets this burden the nonmoving party may not rest upon

24   mere allegations or denials, but must present evidence sufficient to demonstrate that there is a

25   genuine issue for trial.  *Id.*

26

27                                **III. DISCUSSION**

28        Scottsdale moves for summary judgment on three grounds.  First, it asserts that Plaintiffs

                                              4

were not entitled to independent counsel because the alleged conflict of interest did not trigger

the application of California Civil Code Section 2860.  Second, it contends that there is no

evidence that Scottsdale had an actual conflict.  Third, it argues that there is no evidence that its

conduct was despicable or in bad faith.

**A. Conflict of Interest**

The insured's right to independent counsel provided by the insurer was recognized in *San

Diego Federal Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal.App.3d 358, 375 (1984).  In

1987, the Legislature codified, with limitations and additional clarifications, the insured's right to

*Cumis* counsel:

> For purposes of this section, a conflict of interest does not exist as
> to allegations or facts in the litigation for which the insurer denies
> coverage; however, when an insurer reserves its rights on a given
> issue and the outcome of that coverage issue can be controlled by
> counsel first retained by the insurer for the defense of the claim, a
> conflict of interest may exist.  No conflict of interest shall be
> deemed to exist as to allegations of punitive damages or be deemed
> to exist solely because an insured is sued for an amount in excess
> of the insurance policy limits.

Cal. Civ. Code § 2860.  The insured's right to independent counsel arises when "the reservation

of rights is such as to cause assertion of factual or legal theories which undermine or are contrary

to the positions to be asserted in the liability case." *Gafcon, Inc. v. Ponsor & Assoc.*, 98

Cal.App.4th 1388, 1422 (2002).  The conflict of interest must be significant and actual, not

merely potential or theoretical.  *Dynamic Concepts, Inc. v. Truck Ins. Exchange*, 61 Cal.App.4th

999, 1007 (1998).

In order to meet the threshold summary judgment burden in this case, Scottsdale must

show (1) that Plaintiffs could not establish that Friedland, who was retained by Scottsdale for the

defense of Rianda's claim, "was able to control the outcome of coverage to [Plaintiffs']

detriment by positions [he] might take in litigation;" or (2) that Friedland's representation was

rendered "less effective by reason of [his] relationship with [Scottsdale]." *Gafcon*, 98

Cal.App.4th at 1423.  Alternatively, Scottsdale may meet its burden by showing that Plaintiffs

have not identified sufficient evidence of a conflict of interest.  For example, in *Gafcon*,

5

defendants could have met the threshold of summary judgment by pointing to plaintiff's deficient discovery responses, that plaintiff "did not possess and could not reasonably obtained needed evidence to show the existence of an actual conflict of interest." *Id.* (citing *Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826, 853-854 (2001)).

The Court concludes that there is an absence of evidence in the record showing either that Friedland was able to control the outcome of coverage to Plaintiffs' detriment or that Friedland's representation was rendered less effective because of his relationship with Scottsdale. Defendants suggest in their brief that Friedland defended Scottsdale on the theory that Plaintiffs were not liable for Rianda's injury because Rianda intentionally disconnected the gas line to the wall heater in an attempt to commit suicide. Plaintiffs have conceded, in their brief and at oral argument, that there is no evidence showing that Friedland in fact pursued any investigation or theory that would not have been in Plaintiffs' best interests. For example, there is no evidence that Friedland took the position that Plaintiffs' alleged violation of and misrepresentation of compliance with various building codes, local ordinances, and health and safety codes caused or contributed to Rianda's alleged injuries.

Plaintiffs' argument that Friedland *might* have confronted a conflict between the positions of Scottsdale and Plaintiffs during the course of the Rianda litigation is not persuasive. Although Plaintiffs suggest that Friedland could have discovered potential harmful evidence regarding the substandard condition of the apartment that could have led Friedland to face conflicting ethical obligations, there is no evidence that such a conflict actually arose. In fact, as noted above, Scottsdale ultimately paid Rianda for her injuries and reimbursed Plaintiffs for Patane's attorney's fees. In fact, Plaintiffs' only out-of-pocket expenses that have not been reimbursed are those incurred in its present dispute with Scottsdale.

Plaintiffs claim that they suffered emotional distress and anxiety because they were concerned about Friedland's possible conflict of interest. Robert Silacci Decl., ¶¶ 2-4; Rusti Silacci Decl., ¶¶ 2-4. However, as discussed above, Friedland did not have a "significant" or "actual" conflict of interest. Further, there is no evidence in the record demonstrating that any adverse position taken by Friedland during the course of Rianda litigation in fact affected or even

6

threatened to affect Plaintiffs' entitlement to coverage.  Mere speculation by Plaintiffs as to what might have happened during the course of litigation against Rianda does not mean that there was an actual conflict.

**B. Bad Faith and Punitive Damages**

"The ultimate test of [bad faith] liability . . . is whether the refusal to pay policy benefits was unreasonable."  *Opsal v. United Services Auto. Assn.* 2 Cal.App.4th 1197, 1205 (1991). Under California law, "an insurer may be liable for the tort of bad faith it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy."  *Safeco Ins. Co. of America v. Guyton,* 692 F.2d 551, 557 (9th Cir. 1982).  Here, Scottsdale's refusal to grant Plaintiffs' request for an independent counsel was based on its reasonable belief that there was no conflict of interest under California Civil Code § 2860.  Plaintiffs have failed to show that Scottsdale's claim specialists failed to consider properly the relevant statutory and case law.  Merely alleging that Scottsdale's specialists are under-qualified because they lack higher education and proper training to assess legal duties of the insureds is insufficient to show bad faith.

An award of punitive damages presumes a finding of bad faith.[2]  Because the Court has not found bad faith, there is no basis for awarding punitive damages.

_____

[2] *See, e.g.*, *Mock v. Michigan Millers Mutual Ins. Co.,* 4 Cal.App.4th 306, 329 (1992) (In order for the insurer's "bad faith" conduct to rise to the level of malicious disregard of the insured's rights for recovery of punitive damages, "a consistent and unremedied pattern of egregious insurer practices" is required.)  *Id.* (citing *Patrick v. Maryland Casualty Co.*, 217 Cal.App. 1566, 1576 (1990)).

7

**IV. ORDER**

Good cause therefore appearing, IT IS HEREBY ORDERED that the motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED:  2/16/06

_____
JEREMY FOGEL
United States District Judge

Case No. C 04-04125 JF
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(JFEX2)

1  Copies of Order mailed on _____ to:

2

3  Nina M. Patane npatane@pglawfirm.com,
   pkimball@pglawfirm.com

4

5  Brijida B. Rodarte brodarte@selmanbreitman.com,

6  Alan B. Yuter ayuter@selmanbreitman.com.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

Case No. C 04-04125 JF
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
(JFEX2)